**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| Doctor PETER ATTIA,<br><br>        Plaintiff - Appellee,<br><br>  v.<br><br>OURA RING, INC.; OURA HEALTH,<br>LTD.,<br><br>        Defendants - Appellants. | No. 24-2622<br><br>D.C. No.<br>4:23-cv-03433-HSG<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Northern District of California
Haywood S. Gilliam Jr., District Judge, Presiding

Argued and Submitted February 13, 2025
San Francisco, California

Before: N.R. SMITH and JOHNSTONE, Circuit Judges, and CHRISTENSEN, District Judge.[**]

Defendant-Appellant Ouraring, Inc.,[1] a United States-based subsidiary of the

---

      [*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

      [**]     The Honorable Dana L. Christensen, United States District Judge for the District of Montana, sitting by designation.

      [1]     The correct name of the Delaware corporation named in this lawsuit as "Oura Ring, Inc." is Ouraring, Inc.

Finnish health technology company Oura (collectively, "Oura"), appeals the denial of its motion to compel arbitration of claims filed by Plaintiff-Appellee Dr. Peter Attia. We have jurisdiction pursuant to 9 U.S.C. § 16(a)(1)(C). We review *de novo* the denial of a motion to compel arbitration. *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1028 (9th Cir. 2022). We affirm.

The district court did not err in concluding this case concerns the existence, rather than the scope, of an agreement to arbitrate. Oura argues that the presence of an arbitration provision with a delegation clause in the parties' 2016 Amended and Restated Shareholder's Agreement ("Shareholder Agreement") requires that issues of arbitrability be sent to the arbitrator. RB-8. But Oura conceded, for purposes of resolving the motion to compel arbitration, the existence of a second agreement governing Dr. Attia's advisory role, which does not include an arbitration provision. Oura stated that the district court "may construe the Plaintiff's allegations that he entered into the [Advisor Agreement] in a favorable light at this stage of the proceedings." 3-ER-262. This concession gives rise to a fourth-order dispute about which contract controls. *See Coinbase, Inc. v. Suski*, 602 U.S. 143, 149 (2024) (explaining that fourth-order disputes arise where "parties have multiple agreements that conflict as to the . . . question of who decides arbitrability"). And in fourth-order disputes, it is for the court—not the arbitrator—to determine whether the parties agreed to send a given dispute to arbitration. *See*

*id.* at 149–50.

The district court similarly did not err in its determination that the Shareholder Agreement does not encompass the parties' dispute. When read holistically, the Shareholder Agreement governs Oura's relationship with, and responsibilities to, its Shareholders; it does not purport to govern all future transactions between Oura and Dr. Attia. *See, e.g., Johnson v. Walmart, Inc.*, 57 F.4th 677, 681 (9th Cir. 2023) (concluding that Walmart.com's Terms of Use, which included an arbitration agreement, did not govern plaintiff's in-store purchases). Dr. Attia's claims with respect to his advisory and consulting work do not arise out of the contract containing the arbitration agreement; rather, his claims arise out of an entirely separate agreement governing Dr. Attia's advisory work. *See id.*

**AFFIRMED.**